**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL S. BROWETT, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) 3:16-cv-00181-RCJ-WGC |
|        vs. | ) |
| | ) **ORDER** |
| CITY OF RENO, | ) |
| | ) |
|        Defendant. | ) |
| | ) |

This case arises under the Family Medical Leave Act of 1993 ("FMLA").  Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 18).  The Court grants the motion in part and denies it in part.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff Michael Browett began working for Defendant City of Reno ("the City") as a Police Cadet on September 2, 2005. (Compl. ¶ 9, ECF No. 1).  After graduating first in his class at the Northern Nevada Law Enforcement Academy, he began duty as a Police Officer for the City, and he was promoted to Sergeant in 2011. (*See id.* ¶¶ 10–13).  His performance evaluations indicate that he has always met or exceeded standards. (*Id.* ¶ 15).  Plaintiff took and passed the Lieutenant exam in early 2015, obtaining the top score of all examinees. (*See id.* ¶ 17).

On April 7, 2015, Plaintiff's second child was born. (*Id.* ¶ 18).  Prior to his child's birth, Plaintiff had discussed with his supervisors, Lieutenants Newman and Larson, his need to take

sick leave to care for his newborn child, his 2-year-old child, and his wife, who had been experiencing medical issues related to the pregnancy. (*Id.* ¶ 19).  Because Plaintiff had accrued sufficient paid sick leave, Lieutenant Newman or Larson scheduled several weeks of paid sick leave into the Reno Police Department's ("RPD") employee timecard management system that day. (*Id.* ¶ 20).

On April 8, 2015, RPD Payroll Clerk Lori Heidenreich emailed Plaintiff requesting an explanation for the sick leave, explaining that it was appropriate if necessary to care for a sick family member but not if it was for "bonding with your new baby," in which case he would have to use vacation time. (*Id.* ¶ 21).  Plaintiff responded the same day that the request was an invasion of his privacy and a violation of the Collective Bargaining Agreement ("the CBA"). (*Id.* ¶ 22).  Plaintiff also spoke with Deputy Chief Venzon about the incident, and Venzon told him that the issue was with the City, not RPD, that other members of RPD had had similar issues with the City, and that Plaintiff would suffer no consequences at RPD as a result of any conflict with the City over his use of sick time. (*Id.* ¶ 23).  On April 10, 2015, Plaintiff confirmed to Heidenreich that he was not taking "paternity leave." (*Id.* ¶ 24).  On April 20, 2015, Plaintiff told Lieutenant Newman that his wife was now suffering a life-threatening complication. (*Id.* ¶ 25). Plaintiff called Deputy Chief Venzon with this information on May 5, 2015, and Venzon requested verification from Plaintiff's wife's doctors. (*Id.* ¶ 26).  That day, Plaintiff provided Venzon with letters from two of his wife's providers indicating the need for Plaintiff to care for his wife and newborn for up to 12 weeks following the birth and specifically noting that the time was not "bonding time" but was essential for the health and well-being of the mother and child. (*Id.* ¶ 27).

On May 6, 2016, the City sent correspondence to Plaintiff indicating that it had designated his leave as FMLA leave, that his accrued sick leave was not available for use, and that the time would be counted against his vacation or other leave time. (*Id.* ¶ 28).  Plaintiff responded on May 11, 2015 by email to Marlene Chapel of the City's Human Resources Department, objecting to the designation of his leave as FMLA leave and noting that he was using accrued sick leave in accordance with the CBA. (*Id.* ¶ 29).  He explained that the City's assumption that the time was being used for "bonding with his new baby" was incorrect, and he briefly explained his wife's medical condition. (*Id.*).  He further explained that because he had sufficient accrued sick leave, he did not want to take unpaid FMLA time because he may need it later. (*Id.*).  On May 12, 2015, Chapel emailed Plaintiff to tell him that the City had determined he was eligible to use accrued sick leave but that it was still going to designate the time as FMLA leave, i.e., it would run his FMLA leave concurrently with his paid sick leave. (*Id.* ¶ 30).

On June 2, 2015, Plaintiff was interviewed for promotion to Lieutenant by Acting Police Chief Jason Soto and members of the Command Staff. (*Id.* ¶¶ 31–32).  Plaintiff was questioned about his use of FMLA leave and criticized about how the situation was handled. (*Id.* ¶ 32).  On June 11, 2015, Plaintiff was informed that he was being passed over for the open Lieutenant positions, even though he was ranked highest on the promotion list. (*Id.* ¶ 33).  His FMLA leave was noted as the reason. (*Id.* ¶ 34).  Plaintiff was interviewed again on July 20, 2015, and his FMLA leave was again discussed. (*Id.* ¶ 35).  The next day, Soto advised Plaintiff he was again denying him promotion to Lieutenant. (*Id.* ¶ 36).  Plaintiff was interviewed a third time on August 24, 2015, and he was again denied promotion to Lieutenant. (*Id.* ¶¶ 37–38).

Plaintiff has sued the City in this Court under the FMLA, 29 U.S.C. § 2615.  Defendant has moved for summary judgment.

1    **II.    SUMMARY JUDGMENT STANDARDS**

2              A court must grant summary judgment when "the movant shows that there is no genuine

3    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4    Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson*

5    *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if

6    there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See*

7    *id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

8    claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

9              In determining summary judgment, a court uses a burden-shifting scheme.  The moving

10   party must first satisfy its initial burden.  "When the party moving for summary judgment would

11   bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

12   directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v.*

13   *Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks

14   omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or

15   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

16   an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

17   party failed to make a showing sufficient to establish an element essential to that party's case on

18   which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.

19             If the moving party fails to meet its initial burden, summary judgment must be denied and

20   the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

21   398 U.S. 144 (1970).  If the moving party meets its initial burden, the burden then shifts to the

22   opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v.*

23   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

24

the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## III.   ANALYSIS

The FMLA entitles an employee to 12 weeks of unpaid leave during any 12-month period to care for, *inter alia*, a newborn or an immediate family member with a serious health condition. *See* 29 U.S.C. § 2612(a)(1)(A), (C). Plaintiff alleges violations of § 2615, which defines

unlawful activities. Section 2615 provides for relief under several theories. Plaintiff does not precisely identify which subsections of § 2615 he means to invoke, but his intent from the well detailed Complaint is clear. The Court perceives two claims under the FMLA—one each under § 2615(a)(1) and (a)(2)—but no claim under § 2615(b) and no common law breach of contract claim, i.e., with respect to the CBA.

### A. Subsection 2615(a)—Interference with Rights

Under § 2615(a), titled "Interference with rights," it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," 29 U.S.C. § 2615(a)(1), or "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter," *id.* § 2615(a)(2). A § 2615(a)(1) claim is usually referred to as an "interference" claim and a § 2615(a)(2) claim as a "retaliation" claim, although § 2615(a) includes both types of claim under the heading of "interference," with respective subheadings of "exercise of rights" and "discrimination." *See id.* § 2615(a), (a)(1)–(a)(2).

### 1. Subsection 2615(a)(1)—Exercise of Rights

Subsection (a)(1), titled "Exercise of rights," prevents an employer from interfering with the exercise or attempted exercise of any FMLA rights. A Plaintiff bringing a claim under § 2615(a)(1) must show that the employer interfered with some right under the FMLA. *See* 29 U.S.C. § 2615(a)(1). Unlike a "discrimination" claim under § 2615(a)(2), there is no burden-shifting framework for an "exercise of rights" claim under § 2615(a)(1):

> In this circuit, we have declined to apply the type of burden shifting framework recognized in *McDonnell Douglas* to FMLA "interference" claims; rather, "[an employee] can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Bachelder*, 259 F.3d at 1125; *see Xin Liu*, 347 F.3d at 1136 ("While other circuits have applied the McDonnell

Douglas framework to FMLA termination [interference] cases, this Circuit . . . explicitly declined to apply this framework [to interference claims].").

*Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

Plaintiff's complaint about the failure of the City to honor his CBA rights to take accumulated paid sick leave separately from FMLA leave is a matter of his rights under the CBA, and Plaintiff has not brought any breach of contract claim for violation of the CBA. Although there is no claim for breach of the CBA, the CBA's terms may be relevant to whether there has been an FMLA violation, because the terms of the CBA may control whether the City's concurrent application of sick leave and FMLA leave interferes with his rights under the FMLA. That is, if the CBA mandates that sick leave accrued thereunder not be counted concurrently with FMLA leave, an employer that nevertheless does so may interfere with FMLA rights by causing the 12 weeks of FMLA leave to be depleted earlier than it should be. The email exchanges show that the City counted Plaintiff's accrued sick leave concurrently with his accrued sick leave. (*See* Emails, ECF Nos. 18-8, 18-10). Plaintiff has adduced Article 10 of the CBA. (*See* CBA 9–12, ECF No. 20-2). The CBA has nothing to say directly about whether accrued sick leave is to be run concurrently with or sequentially to FMLA leave, but it does provide for certain amounts of contractual sick leave. (*See id.*). Because the CBA says nothing about accrued leave thereunder running sequentially to FMLA leave, the City's choice to run accrued leave concurrently with FMLA leave was not a FMLA violation under the CBA, because "[a]n employer may permit an employee to use FMLA leave and sick leave sequentially or may require that the two run concurrently." *Slentz v. City of Republic*, 448 F.3d 1008, 1010 (8th Cir. 2006) (citing 29 U.S.C. § 2612(d)(2)(B); *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001)). In this case, the default rule that an employer may run accrued leave concurrently with FMLA leave does not appear to have been altered by the CBA, so the fact that

the City ran Plaintiff's accrued sick leave concurrently with his FMLA leave, without more, does not support a claim.  However, Browett attests that it was "RPD practice" not to count sick leave against FMLA. (Browett Aff. ¶24, ECF No. 20-1).

The City also may have violated the FMLA if it failed to honor Plaintiff's demand to use accrued sick leave where the statute requires that it honor such a demand.  Either the employer or the employee may demand that certain kinds of accrued paid leave be "substituted" for FMLA leave under certain circumstances.[1]  When leave is used to care for a newborn, a newly-placed foster child, an immediate family member with a serious health condition, or because an immediate family member has been called to active military duty, either the employer or the employee may choose to substitute paid vacation leave, personal leave, or family leave for any part of the 12 weeks of unpaid FMLA leave. *See* 29 U.S.C. § 2612(d)(2)(A).  When leave is used to care an immediate family member with a serious health condition or because of a serious health condition of the employee, either the employer or the employee may choose to substitute paid vacation leave, personal leave, or medical or sick leave for any part of the 12 weeks of unpaid FMLA leave. *See id.* § 2612(d)(2)(B).

Because the leave at issue here was in part to care for an immediate family member with a serious health condition (Plaintiff's wife), Plaintiff was entitled to substitute his accrued sick leave for part of his FMLA leave.  The City's initial refusal to permit Plaintiff to do so may have been unlawful.  Specifically, the City initially noted that if Plaintiff wanted to use accrued leave, it would have to be vacation leave, not sick leave, if the purpose was to care for a newborn.  That

---

1 "The term substitute means that the paid leave provided by the employer, and accrued pursuant to established policies of the employer, will run concurrently with the unpaid FMLA leave." 29 C.F.R. § 825.207(a).

was correct. *See id.* § 2612(d)(2)(A)–(B).  Plaintiff was entitled to use sick leave due to his wife's condition, *see id.*, but he does not appear to have made that clear to the City's human resources personnel until his May 11, 2015 email, and the City honored his right to use sick leave the next day.  Plaintiff did tell the City's human resources personnel as early as April 10, 2015 that his leave was not paternity leave, but he did not affirmatively explain the actual reason to them until May 11, 2015.  Still, there appears to be no dispute that Plaintiff told two of his supervisors at RPD (Lieutenant Newman and Deputy Chief Venzon) on April 20, 2015 and May 5, 2015, respectively, that his leave was needed in part to care for his wife, who had a life-threatening condition.  The Court finds that this knowledge should be imputed to the City as a matter of law.  The City's refusal to permit him to use sick leave until May 12, 2015 therefore very likely violated the FMLA.

The City may be entitled to summary judgment in this case if Plaintiff cannot show that he was unable to use some portion of his FMLA leave due to the City's actions.  Wrongful "forced FMLA leave" can only support a claim under § 2615(a)(1) if the result is an actual inability to use some portion of leave permitted under the FMLA. *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007) ("[T]he employee's claim ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past."); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2nd Cir. 2006) ("The FMLA does not create a right to be free from suspension with or without pay . . . . If Sista were able to demonstrate that such a forced leave interfered with, restrained, or denied the exercise or attempted exercise of a right provided under the FMLA, a cause of action might lie.").  As noted, Browett attests that under RPD practice, he was not required to use any portion of his FMLA leave concurrently with his sick leave and that

he wanted to preserve his entire 12 weeks of FMLA leave in case he needed to take additional time off to care for his wife. (Browett Aff. ¶ 24).  The record is unclear as to whether Browett was unable to take his full 12 weeks of FMLA leave due to the "forced" FMLA leave counted during his sick leave.  The Court finds that there is a genuine issue of material fact as to this question, and the City is therefore not entitled to summary judgment against the § 2615(a)(1) claim.

### 2.  Subsection 2615(a)(2)—Discrimination

Subsection (a)(2), titled "Discrimination," prevents an employer from discriminating in any way against an employee who has opposed any practice made unlawful under the FMLA. Subsection (a)(2) creates a retaliation-type cause of action where the retaliation is in response to complaints about unlawful practices.  To establish a prima facie case, a plaintiff must establish: (1) he engaged in a protected activity under the FMLA; (2) he suffered some adverse employment action by the employer following the protected activity; and (3) the adverse employment action was causally linked to the protected activity. *Raymond v. Albertson's Inc.*, 38 F. Supp. 2d 866, 868–69 (D. Nev. 1999) (Rawlinson, J.).

Plaintiff alleges being passed over for promotion because of his opposition to the City's FMLA policy.  He has adduced enough evidence of discrimination to survive the present motion for summary judgment.  He has attested that Deputy Chief Tom Robinson specifically addressed "the inflammatory email you sent to HR regarding your FMLA" at his June 2, 2015 interview, (*see* Browett Aff. ¶ 29, ECF No. 20-1), and that Deputy Chief Venzon told him on June 11, 2015, "I know I told you if you fought the FMLA issue with the City you would suffer no ill will within [RPD].  It wasn't the fight, but the way you went about it that has caused problems." (*Id.* ¶ 31).

Plaintiff also adduces the affidavit of retired RPD Master Sergeant Nathan Parker, who was present at a June 10, 2015 Lieutenants meeting where Robinson discussed the Lieutenant exam and interviews. (*See* Parker Aff. ¶¶ 2–5, ECF No. 20-5).  Robinson noted that Plaintiff was the top candidate based both on the exam and the interviews. (*Id.* ¶ 6).  He then solicited input on the candidates. (*Id.* ¶ 7).  Parker and Lieutenant Newman spoke very favorably about Plaintiff and recommended him for the position, two or three others in attendance offered no opinion, and Lieutenant Burfield (who had never supervised Plaintiff or worked with him for any significant time) stated that he didn't think Plaintiff should be a Lieutenant because he didn't like him and thought he was immature. (*Id.* ¶¶ 8–9).  Robinson then brought up the FMLA issue between Plaintiff and the City. (*Id.* ¶ 10).  He also addressed an incident where Plaintiff had asked Lieutenant Donohoe for clarification on a point. (*Id.* ¶ 10).  Parker had been present during that incident and recalled that Plaintiff had asked a question Donohoe did not appear prepared to answer and said something like "fine, whatever, never mind" when Donohoe became defensive. (*Id.* ¶ 11).  Robinson used the two incidents to conclude that Plaintiff was argumentative and disrespectful, but Parker said he disagreed and said that Plaintiff would be an excellent Lieutenant. (*Id.* ¶¶ 12–13).  Robinson had stated before the meeting that there was a "gag order" on it and questioned Parker a short time afterwards to ensure he had not spoken to Plaintiff about what had transpired at the meeting. (*Id.* ¶¶ 5, 15).  Parker told Robinson that he had told Plaintiff that Plaintiff was discussed at the meeting and had told Plaintiff what Parker (but not Robinson) had said about him. (*Id.* ¶ 15).  Parker was soon thereafter demoted despite having all positive monthly evaluations during his probationary period as Lieutenant. (*Id.* ¶ 16).

Plaintiff also adduces the affidavit of retired RPD Commander Shannon Wiecking who was at the June 10, 2015 meeting. (*See* Wiecking Aff. 2, 9, ECF No. 20-6).  Wiecking noted that

Robinson's request for input as to Lieutenant promotions was abnormal for two reasons: (1) the command staff had never before asked existing Lieutenants for input as to candidates for Lieutenant positions as a general matter; and (2) the command staff had not been notified prior to the June 10, 2015 meeting that Robinson would seek such input at that meeting in particular. (*See id.* ¶ 9).

Plaintiff has adduced sufficient evidence to create a genuine issue of material fact on his retaliation claim under § 2615(a)(2), even assuming for the sake of argument that the City could meet its initial burden on summary judgment. And even assuming the City has produced evidence of a legitimate non-discriminatory reason for passing Plaintiff over for promotion, *see Sanders*, 657 F.3d at 777 & n.3, Plaintiff has adduced evidence of pretext, *see id*. A reasonable jury could find based on the evidence adduced that the actual motivation for the refusal to promote Plaintiff was his opposition to the City's FMLA policy.

Where the alleged legitimate reason for the adverse action is intertwined with the protected activity itself, i.e., "the way the employee went about the protected activity," it would be inappropriate to determine the issue of pretext on summary judgment. The evidence adduced by the City to show a legitimate reason for the decision not to promote Plaintiff—his emails to HR personnel over the FMLA issue—are not particularly "inflammatory." (*See* ECF Nos. 18-1 to 18-10). There is no profanity or insulting language in them. They can at worst be described as stubborn. Although the tone is one of frustration and protest, that is of course the nature of activity in opposition to perceived rights violations. Absent some extreme action beyond protest directed through appropriate channels, as here, the protected activity itself cannot be invoked as the legitimate reason for adverse action simply because the protest results in a conflict, otherwise the exception for legitimate motives would swallow the right to oppose unlawful activity. At a

minimum in such cases, where there is no allegation of violence, illegal threats, deception, etc., but only of a too-harsh tone in opposing unlawful practices, whether a plaintiff's opposition to perceived unlawful practices went beyond the bounds of decency such that the protected activity itself became an independently legitimate reason for an adverse employment action must be left to a jury.

The City also adduces letters given to Plaintiff explaining the decisions not to promote him. (*See* ECF No. 18-11). Insofar as they are meant to show legitimate reasons for the City's decision, they are far too generalized and conclusive to support summary judgment as to the issue of legitimate reason versus pretext, especially as the letters are all dated after the June 10, 2015 meeting at which the illegal motivation became clear. The excerpts from the Venzon deposition simply reaffirm that the basis of the decision not to promote Plaintiff was his fight with the City over the FMLA issue. (*See* Venzon Dep. 74, ECF No. 18-12). The Court denies summary judgment against this claim. Anyway, the City appears to make no direct argument against the § 2615(a)(2) retaliation claim in its motion.[2]

Finally, employees are only protected from retaliation under § 2615(a)(2) for opposing policies that are actually unlawful under the FMLA (or attendant regulations) or which the employee reasonably believed to be unlawful. *See* 29 C.F.R. § 825.220(e); *Fries v. TRI Mktg. Corp.*, No. 11-1052, 2012 WL 1394410, at *8 n.7 (D. Minn. Apr. 23, 2012) (collecting cases). The remaining question is whether Plaintiff's belief that the City's policy violated the FMLA or attendant regulations was correct, or at least reasonable. The Court finds that Plaintiff's belief

---

2 The City notes that Plaintiff only sued for "interference" under § 2615, but that does not limit the claim to § 2615(a)(1). "Discrimination," under § 2615(a)(2), i.e., retaliation for opposing unlawful practices, is a type of "interference" under § 2615(a).

that the City's policy violated the FMLA was at least reasonable, if not correct.  As the Court has noted, Article 10 of the CBA provided for accrued sick leave, and it does not appear disputed that Plaintiff had accrued the sick leave thereunder that he sought to substitute for FMLA leave. At least one reason for Plaintiff's leave was to care for his wife due to her serious health condition, and under such circumstances the regulations permitted Plaintiff to demand the use of accrued sick leave for some portion of his FMLA leave.  It does not appear disputed that the City initially denied him that ability.  At a minimum, Plaintiff had a reasonable belief that the City had violated his rights under the FMLA by refusing to permit him to use his accrued sick leave. He opposed that practice, and he has provided evidence that he suffered retaliation for his opposition.

### B.      Subsection 2615(b)—Interference with Proceedings or Inquiries

Under § 2615(b), titled "Interference with proceedings or inquiries," it is unlawful for an employer to "discharge or in any other manner discriminate against any individual because such individual . . . has filed any charge, or has instituted . . . any proceeding, under or related to this subchapter [or given or is about to give any information or testimony related to such proceeding." *Id.* § 2615(b)(1)–(3).  The Court does not perceive any claim under § 2615(b), which creates a retaliation-type cause of action where the retaliation is in response to filing proceedings under the FMLA.  Plaintiff does not allege having filed any FMLA-type charge or lawsuit before the alleged retaliation occurred.

///

///

///

///

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 18) is

3   DENIED.

4        IT IS FURTHER ORDERED that the Motions to Seal (ECF Nos. 17, 21) are

5   GRANTED.

6        IT IS SO ORDERED.

7   Dated this 17th day of February, 2017.

8

9                                        _____

10                                        ROBERT C. JONES
                                         United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24